(No. 5673.  Decided July 14, 1905.)

THE STATE OF WASHINGTON, *on the Relation of C. M.*
*Nettleton, as Administrator etc., et al., Respondent,*
v. OTTO A. CASE, *as County Clerk of*
*King County, etc., Appellant.*[1]

EXECUTORS AND ADMINISTRATORS—FEES—TAXATION—UNIFORMITY—
CLERK'S FEES BASED UPON VALUATION OF ESTATE—PROPERTY TAX—
VALIDITY. Laws 1903, p. 290, prescribing a scale of fees, based upon
the valuation of the estate, to be paid to the clerk of the court
upon filing the first papers in probate, imposes a charge in the nature
of a property tax upon estates, which is void because not uniform
or levied in proportion to value, where the fees exacted are paid into
the general fund of the county and have no relation to the services
rendered in the administration of the estate.

SAME—STATUTES—TITLE OF ACT—SUFFICIENCY. Laws 1903, p. 290,
entitled an act relating to the fees of county officers, and which pro-
vides for an *ad valorem* charge upon estates in probate, called a
clerk's fee, in the nature of a property tax, violates art. 2, § 19 of
the constitution providing that no bill shall embrace more than one
subject, which shall be expressed in the title.

Appeal from a judgment of the superior court for King
county, Frater, J., entered April 13, 1905, in favor of the
relators, granting a writ of mandate as prayed for, upon over-
ruling a demurrer to the petition.  Affirmed.

*Kenneth Mackintosh* and *Ernest B. Herald,* for appellant.
*Allen, Allen & Stratton,* for respondent.

HADLEY, J.—The relators applied to the superior court
for a writ of mandate, directed to the county clerk of King
county, requiring him to receive and file certain papers in
probate proceedings.  An alternative writ was issued.  By
the demurrer to the petition and alternative writ, the fol-
lowing facts are admitted:  D. McL. Brown died in King

[1]Reported in 81 Pac. 554.

county, on the 23d day of January, 1905, he being at the time of his death a member of the partnership consisting of himself, W. A. Brown, D. A. Brown, and C. M. Nettleton, doing business under the firm name of Seattle Bridge Company. Thereafter the said Nettleton was duly appointed as administrator of said partnership estate, and he qualified as such. An inventory and appraisement of the estate were duly prepared, the appraisement showing the valuation of the property belonging to the partnership at $127,655.50.

The administrator presented the inventory and appraisement to the clerk for filing, whereupon the latter demanded that the administrator should pay the sum of $225 as probate fees, and refused to file the papers until said sum should be paid to him. Thereafter the administrator also prepared a petition for an order to sell certain real estate belonging to the partnership, and thereupon tendered the petition to the clerk for filing, together with filing fees; but the clerk refused to file the same, or to accept the sum tendered otherwise than on account of part payment of said demand of $225. The demurrer challenged the sufficiency of the above recited facts to authorize the issuance of the writ of mandate, and the same was overruled. The clerk declined to further answer, and it was thereupon ordered that a peremptory writ of mandate should issue, commanding him to immediately file the papers mentioned. From said order he has appealed.

The appeal involves the constitutionality of an act of the legislature of 1903, relating to the fees of state and county officers, witnesses, and jurors. See, Laws 1903, p. 290. That portion of the act particularly involved here relates to the charges in probate proceedings, and will be found at pages 293, 294, of said session laws. The trial court held the said provisions to be unconstitutional.

It will be observed that the statute requires the payment of $5, in probate proceedings, at the time the first paper therein shall be filed. In addition to the above amount, a

graduated schedule of fees is provided. Increased amounts are chargeable to estates of $1,000 or more. The sum to be paid increases according to the value of the estate involved, the amount to be determined by the appraisement returned into court. When the amount of the estate is $1,000 or more, and less than $2,000, the additional sum required is $2.50. The amount is thereafter increased, based upon stated estate values, until the valuation reaches $50,000 or more, and less than $100,000, in which case the sum of $125 shall be paid. It is then provided that estates exceeding $100,000 shall pay, in addition to the said $125, the sum of $50 for each additional $20,000 valuation above $100,-000. The estate at bar, as we have seen, is valued somewhat in excess of $127,000, and the fee demanded by the clerk was $225. Whether the amount demanded is excessive, even under the terms of the statute, we shall neither discuss nor decide, since that matter is not discussed by counsel. The constitutionality of the statute is alone considered in the briefs.

The increased fees provided by the statute are based upon an *ad valorem* theory, and regulated according to the amount of property owned by an estate. It was the view of the trial court that charges so exacted amount to a property tax, and that the statute therefore violates our state constitutional provisions with respect to the uniformity of property taxation. Section 1 of art. 7 of the constitution provides that:

"All property in the state not exempt under the laws of the United States, or under this constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. . . ."

Section 2 of the same article also requires that:

"The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, and shall prescribe such regulations by general law as shall secure a just valuation for taxation of all property, so that every person and corpora-

tion shall pay a tax in proportion to the value of his, her, or its property. . . ."

Section 9 of the same article also contains the following:

"For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same."

It does not appear that the property of the estate at bar is exempt from taxation, under the first constitutional provision above quoted, but it is subject to the burden thereof, and must be taxed uniformly with other property according to its value. If, therefore, the charges imposed by the statute in question are in the nature of a tax upon the property, they would seem to impose a burden thereon in addition to that borne by property in general.

Appellant argues that, even in cases of taxation, the rule of equality and uniformity does not forbid a liberal classification, and that, since this law classifies estates according to their value, all in each particular class are affected alike. He cites *State v. Clark,* 30 Wash. 439, 71 Pac. 20, and *State v. Sharpless,* 31 Wash. 191, 71 Pac. 737, 96 Am. St. 893. Neither of said cases relates to property taxation. The first discusses the inheritance tax law, and expressly holds that such a tax is not a property tax, but is a mere charge for the privilege of succession to the ownership and enjoyment of property, following *Magoun v. Illinois Trust & Sav. Bank,* 170 U. S. 283, 18 Sup. Ct. 594, which expressly distinguished such a charge from property taxes, which must be uniform and equal under the state constitutions.

The second case cited discusses a license or occupation tax statute. Such statutes do not provide for property taxes, but are usually based upon the necessity for police regulation. It is true such statutes usually contain revenue features, and some may be entirely for revenue purposes and not for regulation; yet their exaction of revenue is not a

property tax, but is in the nature of an occupation tax for the privilege of conducting a particular business.

No authority has been called to our attention which holds that property itself may be so classified that it shall bear a burden greater than that of other property of like value within the same assessment jurisdiction. If, then, the exactions from estates required by this statute amount to property taxes, we think the statute cannot be upheld.

It is provided that the money thus collected shall be paid into the county treasury, and it thus becomes a part of the public funds, like that derived from ordinary taxation. Appellant further argues, that the same is true of the ordinary fees collected by the clerk for services rendered; that the charge in question here may be regarded not as a tax upon property, but as a fee for services rendered; and that the legislature has the right to fix the amount of such fee. It is true the statute calls the charge a "fee," but if it is apparent upon the face of the statute that the charge is in fact not based upon actual and necessary services rendered or to be rendered, but is based entirely upon a property valuation, thereby partaking of the nature of a tax, it would seem to be wholly immaterial by what name the statute may designate it. The statute in terms shows that the charge is based upon the value of the estate, and shall we conclude that the legislature intended to say, in effect, that the amount of actual and required services varies according to the value of the estate only? If the legislature intended to so declare, it cannot be said that the declaration is supported by experience. Can the legislature arbitrarily say that greater service is required in the settlement of an estate valued at $1,000 than one valued at $999.99? We think not, and yet such is the exact effect of this statute, if it shall be held that these charges are fees for services only.

It seems apparent to us that the legislature cannot arbitrarily adopt such a standard for measurement of the value of the services of the clerk in probate proceedings. It is

true, our statutes fix the compensation of an administrator according to the value of the estate which comes into his hands, but such a measurement of value, we apprehend, is chiefly founded upon the degree of responsibility assumed, an element of proper consideration in fixing the value of an administrator's services. No such element exists in the case of the clerk. His services in the premises are purely clerical, and the amount thereof depends upon the filings and records of each particular case, which can in no reasonable sense be said to depend in each given case upon the value of the estate. It seems clear, therefore, that this statute exacts payments regulated by property valuations alone, and that it must therefore be a tax upon property. Taxes are defined to be "burdens or charges imposed by legislative authority on persons or property, to raise money for public purposes, or, more briefly, 'an imposition for the supply of the public treasury.'" 27 Am. & Eng. Ency Law (2d ed.), 578. The charges here discussed, and which are imposed by the statute in question, seem to include every element comprehended in the above definition.

Appellant has not called our attention to any decided cases bearing directly upon legislation of a character similar to that here under examination. Relators, upon the other hand, cite decisions from two jurisdictions which are adverse to such statutes. A statute essentially similar to ours was passed in Minnesota. By the terms of that statute, a charge of $10 was exacted when the inventory valuation of the estate exceeded $2,000 and did not exceed $5,000. A charge of $25 was required when the valuation exceeded $5,000 and did not exceed $10,000, and by similar increases the charges were greater for greater valuations. The supreme court of Minnesota held that the statute was unconstitutional in *State ex rel. Davidson v. Gorman,* 40 Minn. 232, 41 N. W. 948. The court reasoned as follows:

"But the sums required by this act to be paid into the county treasury must be regarded as *taxes,* in the ordinary

sense of that word, and as it is used in the constitution. They are not in any proper sense fees or costs assessed impartially, or with regard to the expense occasioned or services performed. The amounts are regulated wholly, but arbitrarily, with regard to the value of the estate. They have no proximate relation to the amount of the compensation to be paid to the probate judge, nor to the other expenses of the court, nor to the nature or extent of the services which may become necessary in the proceedings. There is no necessary, natural, or even probable correspondence between the sums to be paid (widely different in amounts with respect to estates of different values) and the nature of the proceedings, or the character or extent of the services, which may be required in the probate court. It cannot be assumed, upon any ground of probability, that these proceedings or services will be different or greater in the case of an estate of the value of more than $500,000 than in one of the value of from $35,000 to $50,000,—yet in the former case $5,000 must be paid, in the latter $100.  .  .  .  The purpose for which such payments are required is strictly public in its nature, being directly 'for the use and benefit of the county,' as the law declares, and indirectly for the support of a court established by the constitution, with exclusive original jurisdiction in certain matters of great and general public concern. Nor is it practically optional with executors or administrators, or those interested in the settlement of the estates of deceased persons, as to whether they will pay these exactions or not. If the law is valid, payment is practically necessary in the great majority of cases; and the mode adopted by the statute of securing payment by making that a condition precedent to the exercise of the functions of the probate court, is as really compulsory, and perhaps as effectual in general, as the means generally employed to enforce the payment of taxes."

In 1895 the legislature of California enacted a similar statute. It was provided that a fee of $5 should first be paid by all estates, and an additional fee of $1 for each additional $1,000 in excess of $3,000 of valuation. In *Fatjo v. Pfister,* 117 Cal. 83, 48 Pac. 1012, the statute was held unconstitutional.  · The court said:

"It is perfectly plain that the legislature has attempted by that portion of section one, above quoted, to levy a prop-

erty tax upon all estates of decedents, infants, and incompetents. The *ad valorem* charge for filing the inventory is in no sense a fee, or compensation for the services of the officer, which are the same, as respects this matter, in every estate, large or small. To call it a fee is a transparent evasion. And it is not merely an inheritance tax, or at all analogous to an inheritance tax, as counsel would contend; for, in the first place, it applies not only to the estates of decedents, but also to the estates of minors and incompetents under guardianship; and, as to the estates of decedents, it applies not to the distributable residue after payment of debts and expenses of administration, but to the whole body of the estate, and would be collectible, if the law were valid, from an insolvent estate, as well as from one of equal appraised value and with no liabilities. As an attempt to levy a property tax, the act is in this particular invalid for several reasons; 1. It violates section 1 of article XIII of the constitution, in imposing an extraordinary tax upon the property to which it applies, in addition to the equal and uniform tax to which alone all property in the state is liable. 2. The subject of the act is not expressed in its title, and is in no wise germane thereto—a violation of section 24 of article IV of the constitution, which requires that every act shall embrace but one subject, which subject shall be expressed in its title."

It will be observed, from the closing words of the last above quotation, that the California statute was also held invalid for the further reason that the subject was not mentioned in its title. The title was essentially similar to that of our own statute, and was as follows:

"An act to establish the fees of county, township, and other officers, and of jurors and witnesses in this state."

The title of our statute is as follows:

"An act in relation to the fees of state and county officers, witnesses and jurors, and repealing an act entitled 'An act in relation to the fees of state and county officers, witnesses and jurors and amending Section 2086 of the Code of Washington of 1881,' the same being approved March 15, 1893."

By no reasonable exercise of the imagination can it be inferred from the above title that the act treats of the subject of exacting an *ad valorem* charge or tax from the property of estates. It therefore violates § 19 of art. 2 of our state constitution, which requires that, "No bill shall embrace more than one subject, and that shall be expressed in the title."

For the reasons hereinbefore assigned, and also upon authority of decisions cited, we believe the act in question is unconstitutional, in the particular here involved, and that the conclusion of the lower court was right. The judgment is therefore affirmed.

MOUNT, C. J., FULLERTON, CROW, RUDKIN, and DUNBAR, JJ., concur.